UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER M. GRETHE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INNOVATIVE PARTNERS L.P., a Texas Limited Partnership<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION<br><br>COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF 18 U.S.C. § 1961 *et seq.* (“RICO”); NEW YORK’S BUS LAW §349, AND UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

# Table of Contents


INTRODUCTION .......... 3

JURISDICTION AND VENUE .......... 4

PARTIES .......... 5

FACTUAL ALLEGATIONS COMMON TO ALL COUNTS .......... 5

A. Innovative Carried Out Its Scheme .......... 6

1. Defendant Posed as a Legitimate Health Insurance Company. .......... 6

2. Defendant Represented to Customers That They Offered Comprehensive, Affordable Coverage When None Existed. .......... 8

3. When Confronted by Phone or Email About Their Lack of Coverage, Defendant Eluded the Issue and Played Logistical Games, Including by Refusing to Cancel Consumers' Plan Memberships .......... 12

B. The Law Caught Up with Innovative Partners: the California Cease-and-Desist Order .. 15

RICO ALLEGATIONS .......... 15

A. The Enterprise .......... 15

B. The Predicate Acts .......... 17

C. The Pattern of Racketeering Activity .......... 19

CLASS ACTION ALLEGATIONS .......... 20

Rule 23(a) .......... 20

Rule 23(b)(1) .......... 21

Rule 23(b)(2) .......... 22

Rule 23(b)(3) .......... 22

COUNT I: Violations of RICO 18 U.S.C. § 1962(c) and (a) .......... 23

COUNT II: Violations of RICO 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c) and (a) .......... 24

COUNT III: Unjust Enrichment .......... 25

COUNT IV: Violation of N.Y. Gen. Bus. Law § 349 .......... 25

PRAYER FOR RELIEF .......... 26

DEMAND FOR JURY TRIAL .......... 26

## INTRODUCTION

1. This is class action on behalf of numerous consumers, many with significant healthcare needs, who paid Innovative Partners L.P. (hereinafter "Innovative" or "IP" or "Defendant") health insurance premiums in exchange for nonexistent health insurance coverage. Using a variety of deceptive and fraudulent statements and omissions, Innovative convinced these consumers to pay a monthly premium of several hundred dollars in exchange for a purported health insurance plan supposedly allowing them access to a wide network of doctors for a modest copay. Innovative also represented that its health insurance plans covered prescription medications. In reality, Innovative never provided any health insurance coverage to its victims: it simply collected the monthly premiums, circulated sham lists of providers to the consumers the consumers would then visit, denied claim after claim, and eluded accountability by giving the consumers the "run around" when contacted over the phone or by email regarding a denied claim or other failure to provide anything of value. Innovative also made it difficult or impossible to cancel membership in the plan and kept charging the monthly premiums to the consumers' credit or other payment cards despite requests from the consumer to cancel the fictitious plan.

2. The plaintiffs hereby seek compensation for their losses, statutory and punitive damages, and an injunction to prevent further abuse by the Defendant. To do so, plaintiff Peter M. Grethe (hereinafter "Class Representative" or "Plaintiff"), by his attorney, brings this action on behalf of himself and a class of similarly-situated persons to challenge the unlawful, racketeering practices of Defendant in the collection of health insurance premiums under fictitious health plans, as more fully alleged herein. Plaintiff demands a jury trial, and seeks class certification, actual and

treble damages, restitution, and declaratory and injunctive relief, and attorneys' fees, costs and expenses. In support thereof, plaintiff hereby complains and alleges as follows.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the action arises from violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.

4. Furthermore, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because the Class defined herein contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and at least one member of the Class is a citizen of a State different from Defendant (*see, e.g.*, *infra* Par. 45 alleging injury to residents of New York, Pennsylvania, Ohio, Florida and Massachusetts).

5. This Court may exercise supplemental jurisdiction over Plaintiffs' state law (New York fraud statute) and common law (unjust enrichment) claims under 28 U.S.C. § 1367 because these claims are so related to the RICO claim of original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This case does not present novel or complex issues of state law that predominate over claims for which this Court has original jurisdiction, and there are no compelling reasons for declining supplemental jurisdiction over those of Plaintiffs' claims that do not arise under RICO.

6. This Court has personal jurisdiction over the Defendant under CPLR 302(a)(1) because Defendant transacted business in this District in the form of fraudulent health plans being offered here to Class Representative Peter M. Grethe and others and illegally collected premiums from these natural persons, and the claims arise out of these transactions.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because a substantial part of the events giving rise to these claims occurred in this District.

**PARTIES**

8. Plaintiff and Class Representative Peter M. Grethe is a natural person, residing at all relevant times in Sullivan County, New York. Plaintiff Peter M. Grethe acts on behalf of all similarly situated plaintiffs, who are located throughout the United States.

9. The Defendant, INNOVATIVE PARTNERS L.P. ("Defendant") is a Texas limited partnership that has its principal place of business in Coral Springs, Florida.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

10. Defendant contacted individuals in search of healthcare coverage through the federal Health Exchange website and the Health Exchange of various states. Once connected to a potential buyer of healthcare coverage, Defendant represented that it was offering comprehensive health coverage plans in exchange for a monthly premium and certain modest copays. Defendant would also represent that it was affiliated with reputable providers of healthcare insurance, such as Aetna, Emblem, or Blue Cross Blue shield, and that it offered coverage over a large network of doctors throughout the country. Defendant would assure the consumer that their particular doctors were "in-network." Enticed by these promises, the consumer would sign up for the plan and begin paying the monthly premiums – typically several hundred dollars a month. Defendant then sent the new member a digital and/or physical membership card that showed the names and logos of various providers of health insurance in addition to Innovative's logo and would recapitulate the benefits supposedly afforded by membership in the plan (such as, for example, a

$50 copay for specialists and $25 for generalist), also showing a "member ID" and "Group Number" as well as one or more phone numbers for claims inquiries. Upon request, defendant would communicate to the new member long lists of supposedly in-network doctors. The consumer would then visit certain of these doctors and incur a bill. All claims submitted by the doctors or the plan member would then be denied by Defendant. When contacted by phone by the plan member as to why no claims were honored, Defendant would elude the questions, hang up the phone, ask the consumer to call another number, or gaslight the consumer in some other exasperating way. Should the plan member request cancellation of the plan, the request would be delayed or altogether ignored.

11. Defendant's scheme can be summarized in the following three steps. The Better Business Bureau's website shows 480 consumer complaints against Innovative in the last 3 years, including 84 in the last 12 months, with numerous allegations from the consumers that they have been swindled by Innovative.

### *A. Innovative Carried Out Its Scheme*

#### 1. Defendant Posed as a Legitimate Health Insurance Company.

12. When communicating with potential victims, Defendant routinely claimed to be affiliated with certain legitimate health insurance companies. These misrepresentations were made by Defendant's phone representatives on the phone with customers during the enrollment process. Defendant has also placed the logo of a legitimate insurance company in addition to their own on the plastic or digital membership card they send to their customers once they have enrolled. In a review dated 05/09/2025 on the Better Business Bureau's website's page collecting complaints against Innovative, a Kaylie K notes:

> “Wish I could give 0 stars! They are liars and will not let you cancel! I was told I was receiving **an Aetna plan** when in fact [redacted] has never heard of such a company! My doctor told me I would have to pay 100% out of pocket! No coverage on prescriptions NOTHING IS COVERED!!! How do these people sleep at night and wake up to scam people! I had to change my bank card so they couldnt come back and take more money I was told it was $235 a month and they took $332. Fraudulent company scamming people that really need medical attention! Sickening!!!! Please dont ever purchase anything from these people!!” (Emphasis added, redaction in the original).

13. Similarly, Peter L. on 06/24/2025, also on the Better Business Bureau’s website, states the following regarding Innovative:

> “This company is a [redacted]. **They disguised themselves as Blue Shield Insurance online**. When I thought I was calling **Blue Shield**, and getting set up with them, I got a confirmation that it was Innovative Partners. I initially asked the representative on the phone, **and he confirmed they were Blue Shield.** This was a lie. After I got the confirmation already, and asked why it said Innovative Partners instead, **he said they were with Blue Shield**. When I tried to cancel this insurance and get a refund due to this deception, they made the process very difficult. They made me wait a long time on phone after transferring me multiple times. Their "cancellation department" said they'd be able refund me and cancel my account. The last person I was transferred to, after that, told me they won't refund me, but she will email me a confirmation that the account is closed. I never got a confirmation, so it doesn't look like they cancelled anything. They lie, **they Impersonate another company**, waste your time, and steal. This is insurance [redacted], and I sense a class action lawsuit in the future for Innovative Partners.” (Emphasis added).

14. On certain member card sent to customers after enrollment in the fictitious plan, the words “Aetna Dental® Administrator” can be read, along with “First Health Network”. A Google search of “First Health Network” shows at the top of the results a link explaining that First Health Network is a subsidiary of Aetna.

15. Further, a complaint against IP dated 04/22/2025 on the BBB website reads as follows:

> “On 4/22/2025 I contact the number for [redacted] that assists with health insurance exchanges, asking about how to switch my current health insurance which I purchased through the [redacted]. I was unknowingly then transferred by phone an insurance person named "[redacted]" who I was not told was not working for [redacted]. **He sold me an insurance product which he said was from the company Emblem**, which I had used in 2024 and before. But when he emailed me documents to sign for the insurance, it had the name "Innovative Partners" but "[redacted]" **assured me that the name Emblem** would appear on the insurance card that I would receive my mail and in a subsequent email.

> After payment was made he abruptly hung up the phone mid-conversation, and did not call me back, and when I tried to call back I could not reach him. When I called the telephone number on the email I received from "Innovative Partners" they said that my name and ID number did not have an account from them, and they refused to provide me with an address for the company Innovative Partners. I called back [redacted] and they told me that Innovative Partners is not an [redacted] but a separate company, and searching online there have been numerous comments indicating that this company, Innovative Partners, is an elaborate scam, that I was directed to by the NY State number I'd called. . . ."

16. Similarly, another consumer complaint against IP on the Better Business Bureau's website reads:

> "I am rejecting [IP's response to a previous complaint] because: I called the number and spoke to [redacted] in [redacted] She refused to allow me to speak to anyone in billing or management and said that despite being sold this "limited benefit plan" in 2023 by [redacted], and having other call center operators reply with responses telling me to simply re-file a claim with the dates of service, or other excuses for why it may have been denies... [Redacted] claims "we are not affiliated with them, they are an agency and we have no record of who you spoke to or who sold you the plan," So they are refusing any accountability for miscommunicating and misleading me to believe that this was health insurance and that I was covered for medical services I had received. **They also have in the initial packet AETNA highlighted, and had led me to believe in a very misleading way that I was covered through Aetna. Also provided the name of an app to access my "Aetna plan" over the phone.**
> I think they should be help [sic] accountable for their business practices and they should not be allowed to hide behind using an agency to sell their limited benefit plans as health insurance, leaving myself (and probably plenty of others) in crippling medical debt, unknowingly, due to misinformation and lack of clarity."

17. The purpose of these misrepresentations is clear: to inspire the purchaser's trust by referring to well-known insurance companies, and to induce the consumer to purchase IP's counterfeit health insurance plan.

### 2. Defendant Represented to Customers That They Offered Comprehensive, Affordable Coverage When None Existed.

18. In addition to posing as affiliates of legitimate health insurance companies, Defendant made numerous representations regarding the health coverage they purportedly offered to potential customers during the enrollment process. Covered with the appearance of legitimacy,

Defendant multiplied the representations that they offered affordable, quality health coverage. For example, the bottom of the digital temporary ID card that was sent by Innovative to a customer reads:

> "Find a provider by visiting: www.firsthealthlbp.com/fhlbpfi"

19. The webpage accessible through this link reads, in turn:

> "The First Health Network is one of the nation's largest PPO networks, offering access to affordable health care. First Health Network has access to more than 5,000 hospitals, over 90,000 ancillary facilities, and over 1 million healthcare professional service locations in the United States, including Puerto Rico. The network covers over 98% of the US population.
> Service provides members affordable access to physicians by allowing them to pay a $10 office visit pre-pay before insurance benefits are applied.
> SEE A NETWORK DOCTOR OR FACILITY FOR GREATER SAVINGS!
> You can see ANY doctor or hospital of your choice and the insurance plan will pay the same level of benefit – no penalties
> However, if your doctor or hospital is part of the First Health Network you may also receive discounts on their billed charges"

20. These statements are completely misleading, suggesting that Defendant through First Health Network had access to a wide network of providers. Defendant's misrepresentations made during the enrollment process are also evident in the litany of complaints filed by some of Defendant's victims on the Better Business Bureau's website.

21. For example, a consumer complaint posted on the Better Business Bureau's website on 12/4/2025 reads:

> "My family and I signed up through **innovative partners telling me that** they were affiliated with [redacted] and that **it would cost me a little over $300 a month to have complete coverage for my family**. They would not even cover vaccinations. I had a bill sent to me for $4000 because son had to go to an urgent care at 9:00 PM. They wont let me cancel my policy nor will they let me view claims that have been made to pay for existing medical bills."

22. Another consumer complaint on the Better Business Bureau's website's Innovative page dated 10/29/2025 reads:

> "I had lost my job and lost my health insurance from work. I reached out to this company for health insurance. [Redacted] was the guy who set me up but never verified any of my medicines so when I was putting in prices for my medicines **I am a type 2 diabetic and the medicines were over $1800 and not what he had quoted me at all**. So I called them back and canceled. They then were still taking money out of my account which was [redacted] and they finally reimbursed that amount. I called and spoke to 10 other people trying to get the initial payment refunded and had 3 tell me it would be in 48 hours but still never received a refund. I have been dealing with them since September and still nothing has been done. I told them I has no job [sic] or income and I needed that money. They didnt care"

23. Another complaint dated 10/14/2025 on the Better Business Bureau's website, further illustrates this point:

> "August 1st 2023- **enrolled in what was marketed as a full coverage health plan**. $263.24/month paid via credit card for what **they claimed was "through Aetna"** via a phone call to clarify. **I was also assured that my current doctors were all accepting this insurance.** 5/23/2024- was scheduled for an MRI breast cancer screening. the order was sent in by my primary care physician and they scheduled it (I was told it had to be after confirming coverage with my insurance). 2025 I received a bill from Mass General [redacted] for $8,969.74 for the [redacted] After calling and speaking to the "insurance" at innovative partners, I was told to have Mass General re-submit the claim with the date of service for it to be approved. 9/21/2025- I receive the same bill, and this time Innovative Partners tells me they do not cover [redacted] my mother (without my consent or knowledge), begins paying the payment plan for the total balance. 10/8/2025 I cancelled the plan with Innovative Partners and filed a complaint with the [redacted] office for the misleading sale of a plan that is not actually health insurance, I contacted mass general's billing department to dispute the balance from the appointment I would not have agreed to if notified of the cost" (Emphasis added; redactions in the original).

24. A similar pattern can be observed in the following 12/12/2025 complaint posted on the Better Business Bureau's page pertaining to First Health Network, Innovative claimed to be affiliated with in enrollment calls and on the membership cards it sent to plan participants:

> "**First health network renaged on health coverage that I was told would be covered at the time I purchased the health insurance**. Here is the just one example but not limited to. It says on my insurance card that I have a [redacted] dollar copay for specialist & a [redacted] dollar copay for primary care. They also said up to [redacted] dollar hospitalization up to 10 days. **None of which they honored.** This health coverage is a scam! They violated this on many levels." (Emphasis added).

25. Similarly, a 12/7/2025 consumer complaint on the Better Business Bureau's website reads:

> "On December 1st of 2025 I had signed my family up for a marketplace insurance policy through First Health Insurance through a company called "[redacted]." I was directed to this company when calling [redacted], so I thought the company was reputable and very knowledgeable with healthcare coverage. I wrote down all the information, including even getting the insurance agent's license # [redacted] to ensure that I was speaking to a credible insurance agent. **I then went through a list of doctors with the insurance representative who identified himself as "[redacted]." [Redacted] assured us that all of our doctors were in network for "First Health".** My husband and I agreed to pay the $100 one time enrollment fee and the $598 one month fee that would be applied to January's payment for the marketplace insurance. [Redacted] then sent over proof of payment and temporary ID cards. It was not until December 2, [redacted] that **I realized First Health was not covering any of the drs that we were told they did.** We were sold insurance that we cannot use. I have tried reaching out to [redacted] both by phone and email to initiate a refund. It sounds like a party house in [redacted] when they answer, and they just tell me to call the number on their website. As of December 5, 25 I have disputed the credit card charge that I paid on for this health insurance in the amount of $698.41. This card has also been cancelled so they cannot charge again. I was told by [redacted] that I can cancel at anytime because this is a "non contractual" plan. If this is indeed the case, then I do not know why it is near impossible to get this resolved. This plan is supposed to begin on Jan 1, 2026 but we would be unable to anyways. We opted to pay more for a PPO plan to not have to worry about coverage or being out of network. All the complaints listed on the BBB website against First Health Insurance confirm that this same thing has happened to dozens of others." (Emphasis added).

26. After Innovative responded to a consumer complaint on the Better Business Bureau's website, claiming it is "not an insurance company," the consumer posted the following colorful remarks on 10/21/2025:

> "I am rejecting this response because: you are lying. **You marketed yourself as a health insurance company and told me that you were.** I wouldn't have set up an account otherwise. You are being sued already for insurance fraud in 2 states and its about to be 3. Refund all my transactions immediately." (Emphasis added)

27. Yet another complaint, dated 1/21/2026 on the Better Business Bureau's Innovative page reads:

> "I signed up with Innovative Partners (a PPO plan) in February 2024, **with 80/20 coverage promises**. I have paid monthly premiums of $439 through early 2026.Ive had two hospital visits (June 2024 and April 2025 to [redacted]).Hospital billed me directly

for the full amounts ($5,302.89 and $1,153.45).Multiple attempts to have bills processed by Innovative Partners have failed they claim address or system update issues. I have not received any coverage claims, Explanation of Benefits (EOBs), or claim resolutions. I have stopped paying premiums until this matter is resolved" (Emphasis added and redactions in the original).

28. Another complaint, dated 11/04/2025 reads:

"I was misled into paying Innovative Partners LP for **what was described as legitimate health insurance** through [redacted]. I paid a $448 enrollment fee and $323.96 monthly beginning February 2025. I later learned the company is not licensed to sell insurance and is under a Cease and Desist Order from the [redacted]. The plan provided no valid coverage dental offices and providers were unable to verify benefits. I have filed a fraud claim with [redacted] and am requesting a full refund of all payments and cessation of billing." (Emphasis added, redactions in the original).

29. A 10/27/2025 complaint confirms that the coverage represented to customers by Innovative did not exist:

"* Initial payment for health insurance submitted August of 2024 * Payment is $300 monthly * **Co-pays listed as $25 for PCP and $50 for specialist, yet there are absolutely NO providers that accept this insurance** * Was told by sales team that lab work covered for zero co-pay or small amount, yet when tried to acquire a TB test for a school job, no lab providers accept the insurance and neither dose [redacted] Unable to acquire a provider list that accepts the insurance * My research shows that there is a [redacted] order for this company including "First Health Network" in [redacted] currently * Also, per the Internet, "There is no evidence of a "Innovative Partners LP First Health Network" ... * I am concerned that this company has scammed many unsuspecting individuals in need of health insurance, and would like at least 6 months if not all 15 months of premiums refunded"

### 3. When Confronted by Phone or Email About Their Lack of Coverage, Defendant Eluded the Issue and Played Logistical Games, Including by Refusing to Cancel Consumers' Plan Memberships

30. The forgoing consumer complaints lifted from the Better Business Bureau's website amply indicate that Defendant made it difficult, or completely impossible, to cancel their customers' plans once the customers realized that the plans covered practically nothing. But there are yet other complaints proving this point and adding color to the fact that Innovative

misled and played games with its unhappy customers. For example, a consumer complaint against First Health Network on the Better Business Bureau's website reads:

> "My husband needed health insurance after I retired. He called a number he believed to be for Covered CA but it wasnt. After paying $621 he got some kind of insurance that covered nothing. The businesses on the card are [redacted] Health. **He called & cancelled & they were suppose to refund our money in 3 days but they did not. Cant speak to anyone on the phone with them.** We need our money back so we can get real insurance. This is an urgent matter because he is ill. His name is REMOVED." (Emphasis added).

31. A customer's response to a complaint thread on the Better Business Bureau's Innovative page, dated 12/15/2025 reads:

> "Innovative partner stated that they have made multiple attempts to contact me, which is completely untrue. I have not received one call from them nor have I received any voicemails from them. **Ive also not received any emails from them so any documentation they have that they tried to reach me is false.** I did call at 5 oclock this evening to attempt to talk to a representative. I was told that my physicians office needed to call. I explained the situation and was still told that the provider needed to call. I explained that the explanation of Benefits was done incorrectly and that my provider would not be calling because I was told in the Better Business Bureau complaint that I should call and that there would be cooperation. There was no cooperation and I was told that no supervisor is available. Although I did call between the time that whoever responded to my complaint stated I should call. So once again, innovative partners is not cooperating with me and not assisting me with this matter. **They are also making false claims that they are trying to contact me which they have not.**" (Emphasis added).

32. Another customer answer to a complaint on the Better Business Bureau's website, dated 01/12/2026, paints a dark picture of Innovative's logistical games it plays over the phone, reading:

> "I am rejecting this response because: As Ive stated the explanation of benefits that I was provided is incorrect. I have spoken with the department of banking and insurance, and I have spoken to [redacted] regarding reimbursement for this. Innovative partners put on the explanation of benefits that I have [redacted] liability for the treatment. In order for that to be correct innovative partners would have had to pay for the treatment. Being that innovative partners paid nothing that means that I am 100% responsible for the treatment. In order to get reimbursed for this, $1600 from December 2024, they need to correct this and they are refusing to do so. Again, no one has given me a direct person to speak to regarding this, and they have made claims that theyve tried to contact me, which are untrue. All it takes is one contact person with a telephone number for me to call. **When I**

> **have called to speak to a supervisor I get hung up on. When I speak to a representative, they tell me to have the doctors office call. This Does not have anything to do with the doctors office.** They have submitted everything correctly. This company needs to get me a corrected explanation of Benefits immediately. I have a copy of the explanation of benefits that I have been trying to attach, but it says that its either too large or not a file thats accepted." (Emphasis added).

33. An additional Customer Answer dated 1/26/2026, reiterates Innovative's manipulation of phone calls with customers:

> "I am rejecting this response because:
> The company has made no effort to try and assist me with this matter. **They claim to have attempted to reach out to me and that its documented. I have received no texts, no emails, and no phone calls from them. They told me to contact them which I did and I was hung up on twice and the other time I was told that my doctor needs to call them.** In the previous communications, the company representative, who does not provide their name or position, instructed me to contact them, and that they would be happy to work with me and assist me with this matter. They have not done so, so I will be contacting a lawyer and the insurance board. Its disgusting that they could not fix an explanation of Benefits to avoid all of this. Its also disgusting that it took them many months to even provide me with an explanation of benefits when legally they have 30 days." (Emphasis added).

34. In addition, the following Customer Answer, dated 10/26/2025 on the Better Business Bureau's webpage pertaining to Innovative, states:

> "**They are stating they have made attempts at contacting me**, but my last email from innovative partners was on 10/8/2025 **regarding my cancellation of the health plan I was sold that covered almost nothing.** When I called and spoke to a representative last week, I was told there was nothing they could do, and that they have "made changes" meaning that NOW that it is already a major issue, they have finally changed how they market and communicate the terms of the coverage they are selling. **This does not resolve the misleading, miscommunication from when I was sold the health plan and when they also consistently just told me to "resubmit the claim with the date of service" insinuating that I was covered**, and further prolonging the problem until they could put me in a position where I am unable to do anything about it. **Calling me from unknown numbers and random times when I am likely at work an unable to take a call, and not emailing, are poor excuses for attempted contact to resolve the issue. They do not seem to actually want to help resolve the issue at all.**" (Emphasis added).

35. Scot P., on 05/06/2025 says, of Innovative on the Better Business Bureau website:

> "I canceled my insurance in ********** and **they continued to pull $372.84 out of my account for four more months**. Would not refund, even though I had evidence of cancellation in December. This is a terrible company."

### *B. The Law Caught Up with Innovative Partners: the California Cease-and-Desist Order*

36. In July 2025, Innovative became the target of a cease-and-desist order from the California Department of Insurance. The Department's press release regarding the order reads, in relevant part:

> "The [California Department of Insurance] launched an investigation after receiving information that California consumers were having their claims improperly denied after purchasing and attempting to use health coverage sponsored by Innovative Partners, LP (Innovative Partners). The investigation found that beginning in 2023, Innovative Partners defrauded victims by selling them limited or non-existent health coverage and convincing them they were purchasing comprehensive insurance plans. Many of these victims believed they were speaking with representatives from Covered California and purchasing comprehensive Blue Shield or Aetna policies. However, when the victims attempted to use their coverage, they found the coverage was limited or non-existent and would not cover the medical expenses they were told were covered with their policy."

## RICO ALLEGATIONS

### *A. The Enterprise*

37. Plaintiffs and Defendant are individual or entity capable of holding a legal or beneficial interest in property, and are therefore "persons" under 18 U.S.C § 1961(3).

38. Defendant conducted and participated in the conduct of an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4) (hereinafter the "Innovative Partners LP Enterprise" or the "IPLP Enterprise" or the "Enterprise"). Members of the IPLP Enterprise are: Defendant; Jimmy Sutton, Ahmed Shokry, Arman Motiwalla, Omar Kasani, First Health Network, PHCS, Marpai Administrators LLC, HealthCare.gov and the health exchange websites of several states.

39. The IPLP Enterprise is an organization which engages in, and whose activities affect, interstate commerce. While Defendant participates in and is a member of the IPLP Enterprise, Defendant has an existence separate and distinct from the Enterprise.

40. In order to successfully obtain the payment of premiums from the public as set forth above, Defendant needed a system allowing it to deceive the public and to conceal its illegal activities. The IPLP Enterprise provided Defendant with the means to accomplish this goal, and Defendant's control and participation in the Enterprise was necessary for the successful operation of their scheme. Defendant controlled at and operated the Enterprise as follows at all relevant times:

(a) By directing Defendant's employees, directors and officers as well as certain members of the Enterprise to reach out to individuals in search of health coverage on the Federal Government's health exchange website and on the health exchange websites of various states;

(b) By representing to these individuals in search of health coverage that Defendant provides extensive, reasonably priced medical coverage that includes the healthcare providers needed or desired by these individuals;

(c) By enrolling individuals in search of health coverage into a fictitious plan offering no or practically no benefits, in exchange for a credit or other payment card information, on which credit or other payment card the monthly premiums were to be charged;

(d) By sending to the new enrollees in the fictitious health plans a membership card summarizing the purported benefits of membership in the plan, along with lists of doctors purportedly belonging to the plan's network;

(e) By continuously providing false information to new enrollees (now Class Members) regarding the healthcare coverage afforded by the plan and the availability of doctors accepting the plan; and

(f) By charging the Class Members the monthly premiums and delaying or outright refusing any request by Class Members to opt out of the plan, so as to continue charging them for membership in the fictitious plan.

41. As set forth above, the IPLP Enterprise has an existence separate and distinct from the pattern of racketeering activity in which Defendant engages.

### *B. The Predicate Acts*

42. Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud). As set forth below, Defendant has and continues to engage in conduct violating each of these laws to effectuate their scheme.

43. Mail Fraud: Defendant violated 18 U.S.C. § 1341 by sending and receiving, and by causing to be sent and/or received, materials via U.S. Mail or commercial interstate carriers for the purpose of executing the unlawful scheme to defraud described in this complaint and for the purpose of obtaining money from the Class in the form of premiums by means of false and fraudulent pretense, representations, promises and omissions.

44. Wire Fraud: Defendant violated 18 U.S.C. § 1343 by transmitting and/or receiving, and by causing to be transmitted and/or received, materials by wire communication for the purpose of executing the unlawful scheme to defraud described in this complaint and for the purpose of

obtaining money from the Class in the form of premiums by means of false and fraudulent pretense, representations, promises and omissions.

45. In particular, Defendant committed mail and wire fraud by:

(a) Knowingly and willfully marketing make-believe health insurance plans through use of the electronic wires on the government's Health Exchanges, as was done for the plan sold to Class Representative Peter M. Grethe on the New York Health Exchange in June 2025, the plan sold to Class Member Martin H. of Florida in or around March 2025 on the Florida Healthcare Exchange, for Heather V. and Kristel R. of California on the Covered California Exchange in or around April 2025, for Paula K. of Ohio on the Ohio Health Exchange in Sept 2023, for Lisa M. of Pennsylvania on HealthCare.gov in September 2023 and for Kramer T. of Massachusetts in Sept 2024 on Massachusetts's Health Connector, and many others.

(b) Knowingly and willfully misrepresenting the make-believe health plan's material features, such as extent of coverage, doctors' network, copays and pharmacy benefits to the Plaintiffs over the phone, in or around March 2025 in the case of plaintiff Martin H. and in or around April 2025 in the case of Heather V. and Kristel R.. Plan benefits were misrepresented to Paula K. in or around September 2023 in the form of statements to the effect that bloodwork would be covered by the insurance, in February 2024 to Lisa M. that her visits with her primary care doctor would be covered, and to Kramer T. that his medications would be covered as well as bloodwork. Additionally, Innovative represented to Class Representative Peter Grethe in June 2025 that hospital visits would be covered and this was another misrepresentation, resulting in considerable medical debt for Peter Grethe.

(c) Knowingly and willfully denying coverage for medical services that had been represented to be covered, as was done in or around April 2025 for plaintiff Martin H's eye surgery; in or around November 2023 for Paula K.'s bloodwork and in or around April 2024 for Lisa M.'s primary care physician visits, as well as in or around February 2026 for Peter G.'s hospitalization.

(d) Knowingly and willfully refusing to cancel the counterfeit health insurance plan once averred it affords virtually no benefits, as we done for Martin H in or around May 2025 and for Heather V. and Kristel R. in or around February 2026.

46. The Defendant's misrepresentations, acts of concealment and failure to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiff and the Class and obtaining their property for Defendant's gain.

47. The Defendant either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiff and the Class relied on the misrepresentations and omissions set forth above.

48. As a result, Defendant has obtained property belonging to the Plaintiff and Class Members, and Plaintiff and the Class have been injured in their business or property by Defendant's overt acts of mail and wire fraud. For example, Paula K. paid Innovative nearly $900 a month for nearly two years (from September 2023 until July 2025) in premiums and Lisa M. paid $213.12 a month from September 2023 until 12 2024. Peter Grethe paid $321 a month from June 2025 to February 2026 in exchange for absolutely nothing.

### *C. The Pattern of Racketeering Activity*

49. As described herein, Defendant engaged in a pattern of related and continuous predicate acts. These predicate acts constituted various unlawful activities, each conducted with the common purpose of obtaining the payment of health insurance premiums from Plaintiffs and Class Members based on the Enterprise's misrepresentations, omissions, and concealment. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

50. All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the IPLP Enterprise. The racketeering acts committed by the IPLP Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on Plaintiffs and Class Members. The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

This constitutes a "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5).

## CLASS ACTION ALLEGATIONS

51. Plaintiff Peter M. Grethe brings this action on behalf of himself and on behalf of a class of similarly situated persons pursuant to Fed. R. Civ. P. 23. The class is defined as follows:

> All persons who purchased fictitious health insurance plans from Innovative Partners LP.

### *Rule 23(a)*

52. Members of the class are the hundreds and perhaps thousands who have purchased fictitious health plans from Defendant, and are so numerous that joinder of all members is impracticable. There are 481 complaints against Innovative on the Better Business Bureau's

website, which indicates the Class could comprise thousands of members. The Class is however ascertainable as the name and address of each Class Member can be identified in business and banking records kept by Defendant.

53. There are questions of law and fact common to the class including, *inter alia*:

(a) Whether Defendant sold fictitious health insurance plans.

(b) Whether Defendant misrepresented the extent of health coverage afforded by its plans.

(c) Whether Defendant provided Plaintiffs with membership cards and lists of doctors that reinforced the appearance that they provided a legitimate health plan.

(d) Whether Defendant delayed and denied cancellation of its make-believe health insurance plans upon request by the plan members.

54. Plaintiff Class Representative Grethe's claims are typical of the claims of the members of the Class because his claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to each member. There are no defenses available to Defendant that are unique to Class Representative or to any particular Class members.

55. Mr. Grethe will fairly and adequately protect the interests of the class. He has retained experienced litigation counsel. Neither Mr. Grethe, nor its counsel have any interests which might cause them not to vigorously pursue the action.

### *Rule 23(b)(1)*

56. Prosecuting separate actions by or against individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the

interests of the other members not party to the individual adjudications or would substantially impair or impede their ability to protect their interests.

### *Rule 23(b)(2)*

57. The Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

### *Rule 23(b)(3)*

58. The questions of law and fact common to Class Members predominate over any questions affecting only individual members. The questions common to Class Members include:

(a) Whether Innovative marketed counterfeit insurance plans;

(b) Whether Innovative made false representations as to the plans when selling it to Class Members;

(c) Whether Innovative denied coverage across the board; and

(d) Whether Innovative delayed or declined cancellations of plan memberships.

59. These questions, which focus on Innovative's attributes, policies and practices, are common to all Class Members and have a direct effect on every Class Member's effort to establish liability, and on every Class Member's entitlement to injunctive or monetary relief. Adding or removing one Class Member does not substantially affect the substance or quantity of evidence offered. A key issue of the case is what Innovative Partners is and is not – an issue common to the Class. Thus, issues common to the Class predominate.

60. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. In particular:

(a) Individual claims by the Class Members are impractical as the cost of pursuing them would outweigh the potential individual recovery;

(b) There has not been any litigation yet for the controversies outlined herein, so that the Class Members have no interest in controlling separate actions;

(c) It is desirable to concentrate this litigation in this forum to promote uniformity of resolution; and

(d) The proposed class action is manageable.

**COUNT I: Violations of RICO 18 U.S.C. § 1962(c) and (a)**

61. Plaintiffs reallege and incorporate the allegations of this complaint.

62. This claim for relief arises under 18 U.S.C. § 1964 which provides civil remedies for violations of 18 U.S.C. § 1962.

63. As set forth above, Defendant has violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the IPLP Enterprise through a pattern of racketeering, and 18 U.S.C. § 1962(a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the IPLP Enterprise, which is engaged and whose activities affect interstate commerce.

64. As a direct and proximate result, Plaintiffs have been injured in their business or property by both the predicate acts which constitute the Defendant's pattern of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate the Enterprise.

65. Specifically, Plaintiffs have been injured in their business or property by Defendant's fraudulent misrepresentations that have caused them to pay premiums when no coverage was in fact available.

**COUNT II: Violations of RICO 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c) and (a)**

66. Plaintiffs reallege and incorporate the allegations of this complaint.

67. This claim for relief arises under 18 U.S.C. § 1964 which provides civil remedies for violations of 18 U.S.C. § 1962.

68. As set forth above, Defendant has violated 18 U.S.C. § 1962(d) by conspiring, with Members of the IPLP Enterprise including Jimmy Sutton, Ahmed Shokry, Arman Motiwalla, Omar Kasani, First Health Network, PHCS, Marpai Administrators LLC, HealthCare.gov and the health exchange websites of several states, to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the IPLP Enterprise through a pattern of racketeering, and 18 U.S.C. § 1962(a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the IPLP Enterprise, which is engaged and whose activities affect interstate commerce.

69. As a direct and proximate result, Plaintiffs have been injured in their business or property by both the predicate acts which constitute the Defendant's pattern of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate the Enterprise.

70. Specifically, Plaintiffs have been injured in their business or property by Defendant's fraudulent misrepresentations that have caused them to pay premiums when no coverage was in fact available.

**COUNT III: Unjust Enrichment**

71. Plaintiffs reallege and incorporate the allegations of this complaint.

72. Plaintiffs conferred to Defendant a benefit by signing up for the healthcare plans offered by Defendant and by paying premiums to Defendant.

73. Defendant is aware of this benefit, solicits and accepts it.

74. Defendant retained the entirety of this benefit by failing to provide anything in exchange.

75. It would be inequitable to let Defendant retain this benefit, and Defendant is unjustly enriched thereby.

76. Defendant continues to enrich itself in this fashion and plaintiff will suffer irreparable harm without appropriate declaratory and injunctive relief, as well as damages.

**COUNT IV: Violation of N.Y. Gen. Bus. Law § 349**

77. Plaintiffs reallege and incorporate the allegations of this complaint.

78. The sale of make-believe health insurance plans marketed as comprehensive and reasonably priced as described in this complaint causes and is likely to cause substantial injury in the form of pecuniary loss which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition.

79. Furthermore, Defendant's material and fraudulent misrepresentations pertaining to the fictitious plan's characteristics such as the availability of in-network doctors, copays and deductible materially interfered with Plaintiffs' ability to understand a term or condition of the plans.

80. Defendant knowingly and willfully violated N.Y. Gen. Bus. Law § 349.

81. As a result, Defendant's business practices are unfair and abusive, and each Class Member is entitled to relief up to three times its injury or $1,000, whichever is greater, pursuant to N.Y. Gen. Bus. Law § 349(h).

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray for the following relief:

As to Counts I and II: Pursuant to 18 U.S.C. § 1964(c), judgment in favor of all Class Members against Defendant, for treble the amount of damages, including attorneys' fees, suffered by reason of payment of premiums in exchange for fictitious health plans, paid through Defendant's predicate acts and violation of § 1962(a), (c) and (d) of RICO together with treble the amount of interest due on payments of premiums made through predicate acts and RICO violations.

As to Counts I and II: Pursuant to 18 U.S.C. § 1964(a), injunctive relief preventing Defendant from creating, marketing or selling fictitious health plans.

As to Count III: Judgment in favor of all Class Members against Defendant for damages in the amount, or restitution, of premiums paid to Defendant for inequitably offering fictitious health plans, plus interest due on these payments.

As to Counts III and IV: Injunctive relief preventing Defendant from creating, marketing or selling fictitious health plans.

As to Count IV: Judgment in favor of all Class Members against Defendant in amounts equal to the greater of $1,000 or three times the premiums paid in exchange for a fictitious health plan.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Respectfully submitted,

Signed by:

CE120E7F48FC4BA...

Nicolas Diefenbacher
The Diefenbacher Law Firm
180 Riverside Boulevard
#3A
New York, NY 10069

4/27/2026